UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PRATT INDUSTRIES (USA), INC.,

        Plaintiff,

v.

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,
LOCAL 6-1050,

        Defendant.
_____/

Case No. 1:05-CV-693

HON. GORDON J. QUIST

## OPINION

Plaintiff, Pratt Industries (USA), Inc. ("Pratt"), filed a complaint against Defendant, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 6-1050 ("the Union"), to vacate an arbitration award entered in favor of the Union. The Union then filed a counter-complaint seeking to enforce the arbitrator's award. Now before the Court are the Union's motion for summary judgment to dismiss Pratt's complaint and to enforce the arbitrator's award and Pratt's cross-motion for summary judgment to dismiss the Union's counter-complaint and to vacate the arbitrator's award. For the following reasons, the Court will deny Pratt's cross-motion for summary judgment and grant the Union's motion for summary judgment.

## I. Background

Pratt operates a corrugated paper manufacturing facility in Grand Rapids, Michigan. The Union is a labor organization that represents the production and maintenance employees at the Pratt facility.[1] The Union and Pratt have a collective bargaining agreement ("CBA").

Article 17 of the CBA defines a grievance as "a dispute between an employee (or the Union) and the Company, which arises during the term of this agreement or any extension thereof." This article provides for a four-step grievance procedure involving meetings between Pratt and the Union and culminating with mediation. If this process proves unsuccessful, it may be followed by arbitration. Part A of the Article 17 Arbitration section provides:

> Any grievance defined in this agreement that has been properly and timely processed through the grievance procedure set forth in this Article 17 and that has not been settled at the conclusion thereof may be appealed to arbitration by the Union serving the Company with written notice of its intention to appeal.

Part C of that section governs the arbitration proceeding and provides:

> The decision of the arbitrator will be final and binding upon the parties. However, while the arbitrator may interpret the agreement and apply it to the particular case presented to him, the arbitrator will not have any authority to add to, subtract from or in any way modify the terms of this agreement or any agreement made supplementary thereto.

The arbitrator set forth the facts of the incident giving rise to the grievance ("the Grievance") in the arbitration report. On Wednesday, November 24, 2004, employees Mike Prins and Valerie Walker were working at the Pratt facility. In addition to their employment with Pratt, Prins is the Union Steward and Walker is the Union President. On that date, Prins was informed of mandatory

---

[1] Prior to April 14, 2005, the union representing Pratt's production and maintenance employees at this facility was called the Paper Allied Industrial Chemical and Energy Workers International Union, Local 1050 ("PACE"). On that date, PACE merged with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW") to form the current union, which inherited the rights and obligations of its predecessor.

overtime hours posted by Shift Supervisor Roger Taylor requiring some employees to work on the following day, Thanksgiving Day. Prins informed Taylor that the posting was invalid unless mutually agreed upon by Pratt and the Union as required by Article 14 of the CBA.[2] There was no mutual agreement, and there had been no discussion between Pratt and the Union regarding the mandatory overtime posting. Taylor refused to remove the posting and insisted that the overtime hours be worked.

Prins and Walker left work at the end of their regularly scheduled shift on the 24th without permission and in contravention of the overtime schedule posted by Taylor. Subsequently, on or about December 14, 2004, Pratt discharged Prins and Walker for violating two "Group II Rules," which carry a possible penalty of discharge for the first violation. Specifically, they were discharged for "[l]eaving the plant during working hours without permission" and "[i]nsubordination (Refusal to perform a service as required by an employee's supervisor or refusal to obey any direct reasonable order given by an employee's supervisor)." (Compl. ¶ 6.)

In accordance with the CBA, Prins and Walker appealed their dismissals to Pratt. Prins and Walker filed the Grievance jointly. Pratt subsequently divided the joint Grievance into two separate individual grievances. The issue of whether the Grievance should proceed as one or two Grievances proved the most contentious issue. The Union also filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), but the NLRB later deferred its consideration of this charge pending the outcome of the parties' own attempts at resolution through arbitration.

The Grievance proceeded through the process to a "Step 3" meeting at which the representatives of Pratt and the Union disagreed about whether the Grievance should be divided.

---

[2]Article 14, Holidays, section (A) states: "Production work may be performed during the following holiday periods after prior mutual agreement between the Company and the Union." Thanksgiving is among the enumerated holidays.

The parties agreed to proceed to a "Step 4" mediation. Pratt offers evidence that the sole purpose of the "Step 4" mediation was to resolve the issue of one or two grievances. When the "Step 4" mediation proved unsuccessful, the parties agreed to arbitrate. Pratt contends that the sole issue presented for arbitration was whether the Grievance should be divided. Pratt asserts that only following an arbitrated decision on that specific issue would Pratt and the Union discuss the merits of the discharges and again proceed through the grievance process.

The parties selected an arbitrator on April 4, 2005, and scheduled the arbitration for May 17, 2005. The parties held a conference call with the arbitrator on May 12, during which, according to Pratt, Pratt informed the arbitrator that the sole issue to be arbitrated was whether the Grievance should be divided. Pratt followed up on May 13 by writing to the arbitrator stating its position that the arbitration was limited to the narrow issue of consolidation and that, should the arbitrator intend to arbitrate the merits, Pratt be immediately informed because holding an arbitration on the merits was contrary to Pratt's wishes. On May 16, the arbitrator attempted to email Pratt his decision that the Grievance would proceed as one united complaint and that Pratt should be prepared to argue the merits the next day at the arbitration. Pratt never received this email.

At the arbitration, the arbitrator asked Pratt to proceed with its case on the merits. Because Pratt had not received the arbitrator's email of the previous day, it objected and attempted to argue the issue of whether the Grievance should be heard as one complaint or separately. The arbitrator reiterated his ruling that the Grievance would be arbitrated as one complaint on the merits that day. Following a recess for the purpose of enabling Pratt and the Union to resolve the Grievance on their own, the arbitrator again asked the parties to present their cases on the substantive merits. At this point, Pratt walked out of the arbitration. The Union then presented its exhibits for consideration. The arbitrator gave Pratt one month in which to submit its response to the Union's exhibits and to

4

present its own case.  Pratt chose not to do so.  The arbitrator subsequently ruled in favor of the Union, with the final report noting that Pratt's claims "fail to address the merits of its disputed actions and fail to address the allegations of wrongful discharge."

Pratt's only arguments to the arbitrator before, during, and after the arbitration related to whether or not the Grievance should be considered as a single complaint or separately.  Pratt argued that once the arbitrator determined that the Grievance would be arbitrated as a single complaint, the Grievance should again go through the grievance steps set forth in the CBA and only proceed to a second arbitration should those steps fail.  The arbitrator rejected Pratt's contention that the claims on the merits should again proceed through the grievance procedures, stating, "The Arbitrator has already found that the parties are at impasse.  The parties are in voluntary, binding arbitration.  This suggests that they, too, at some point recognize that they are at impasse." (Arbitrator's Report at 5 n.5.)

In his ruling, the arbitrator determined that Pratt violated the terms of the CBA by posting overtime hours without approval from the Union.  The arbitrator also found that Prins and Walker should have continued to work the improperly posted hours rather than simply leave at the end of their regular shifts.  However, the arbitrator determined that the actions of Prins and Walker were mitigated by Pratt's willful violation of the CBA, its refusal to treat Prins and Walker in their capacity as union officers when they raised the issue of the illegality of the posting of hours, and its failure to offer any exhibits during or after arbitration in support of the discharge of Prins and Walker or to rebut the Union's exhibits.  The arbitrator ordered Pratt to reinstate Prins and Walker, pay full compensation for wages lost, restore their seniority, and to expunge all record of the incident from their personnel files.  The arbitrator also ordered Pratt to pay $6,000 to the Union to cover arbitration costs, as provided for in the CBA.

Additionally, the arbitrator ordered Pratt to advance the sum of $15,000 to the Union for attorneys fees associated with the pursuit of enforcement of the decision. The parties agree that this award for attorneys fees is outside the scope of the arbitrator's authority, and the Union does not seek its enforcement.

## II. Standard of Review for Arbitration Award

The standard for review of arbitration awards is "one of the narrowest standards of judicial review in all of American jurisprudence." *Tenn. Valley Auth. v. Tenn Valley Trades & Labor Council*, 184 F.3d 510, 514-15 (6th Cir. 1999) (quoting *Lattimer-Stevens Co. v. United Steelworkers of Am., Dis. 27*, 913 F.2d 1166, 1169 (6th Cir. 1990)) (internal quotation marks omitted). In reviewing an award, a court's scope of review is limited to determining whether "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 371 (1987). So long as the arbitrator's award "draws its essence from the collective bargaining agreement" and is not merely the arbitrator's "own brand of industrial justice," the award must be upheld. *Id.* at 36, 108 S. Ct. at 370 (internal quotations omitted).

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns [a] construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*United Steelworkers of Am. v. Enter. Wheel & Car Co.*, 363 U.S. 593, 599, 80 S. Ct. 1358, 1362 (1960). Thus, while an arbitrator is accorded wide latitude in construing a collective bargaining agreement, the arbitrator's interpretation and award must be grounded in the language of the contract. *Misco*, 484 U.S. at 38, 108 S. Ct. at 371. The Sixth Circuit determined that an arbitrator's award fails to draw its essence from the collective bargaining agreement when:

6

> (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement.

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002) (quoting *MidMichigan Reg'l Med. Ctr.– Clare v. Prof'l Employees Div. of Local 79*, 183 F.3d 497, 502 (6th Cir. 1999)).

In addition, courts may upset an arbitration award if it is rendered in "manifest disregard of the law," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995), or if it is contrary to a well-defined and dominant public policy. *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62, 121 S. Ct. 462, 467 (2000). Also, an arbitration award may be vacated based on arbitrator bias if the moving party demonstrates "evident partiality." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328-29 (6th Cir. 1998) (citing 9 U.S.C. § 10(a)(2)).

### III. Discussion

Pratt argues that the award in favor of the employees should be vacated because Pratt never intended to arbitrate the merits of the Grievance and the arbitrator overstepped his bounds by arbitrating the merits. Pratt also argues that the arbitrator showed bias in favor of the Union. Pratt raised these claims during and after the arbitration in its correspondence with the arbitrator.

In support of its assertion that the arbitration was limited to the issue of whether the Grievance should be considered as a single complaint or separately, Pratt points to its communications with the Union and the arbitrator. Regarding its communications with the Union, Pratt highlights a verbal exchange recorded in Pratt's own notes from the "Step 3" meeting between Pratt and the Union. According to Pratt, the Union made the statement, "Lets have a mediator tell

us if they are separate or together," to which Pratt responded, "We will do that. If the mediator says for them to be together, we will go to arbitration." (Compl. Ex. 7.) Pratt's notes indicate that this exchange occurred following a discussion on the issues of the division of the Grievance and the interpretation of the contract provisions leading to the employees' discharge. Viewed in the light most favorable to Pratt, while it appears that the parties agreed that the mediation focus on the issue of dividing the Grievance, the ambiguous statement made by the Pratt representative does not indicate an agreement between the parties that a subsequent arbitration would be limited to that issue. Pratt fails to offer any other evidence indicative of an agreement between the parties limiting arbitration to that narrow issue.

Second, Pratt relies on communications with the arbitrator to support its position. Pratt, in a follow up letter to a conference call between the parties and the arbitrator occurring the week before the arbitration, indicated "that the Employer's position is that the sole and exclusive question you will be asked to render a decision upon on Tuesday is one of arbitrability only." (*Id*. Ex. 9.) The letter further indicates that "the Union is taking the position that the discharges of Walker and Prins should be heard by one arbitrator at the same time in one hearing." The letter reiterates Pratt's position that it wanted the issue of the Grievance's division resolved "in the hearing conducted by you, then based on your decision, an entirely separate arbitration will occur involving a different arbitrator." Finally, Pratt requested that should the arbitrator "have any intention of resolving the dispute concerning the two discharges, you must let me know immediately for that is not the reason the Company has entered into this particular arbitration." This letter indicates a dispute between the parties as to the scope of the arbitration and the issues to be resolved by the arbitrator and also illustrates Pratt's awareness of the arbitrator's possible intent to resolve the merits of the Grievance.

Pratt fails to show an agreement between the parties as to this alleged limited scope of the arbitration. The arbitrator framed the arbitration as "the Union's request for a hearing on alleged damages," further indicating that the Union differed from Pratt on the scope of the arbitration. (Arbitrator's Report at 9.) Once a dispute is submitted for arbitration, the matter of framing the issues is "to be resolved by the arbitrator," who is "limited by the language of the contract." *Avon Products, Inc. v. Int'l Union, UAW, AFL-CIO, Local 710*, 386 F.2d 651, 657 (8th Cir. 1967). The arbitrator in this case reconciled the conflicting positions by ruling on the single or multiple Grievance dispute and then moving on to the merits.

Pratt next argues that the arbitrator overstepped his contractual boundaries because the merits of the Grievance had not proceeded through all of the grievance steps. The Supreme Court has made clear that the issue of "procedural arbitrability" is left to the arbitrator, not the courts. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557-59, 84 S. Ct. 909, 918-19 (1964). The arbitrator here considered Pratt's claims that the Grievance had not passed through all steps of the grievance procedure outlined in the CBA and determined that the issues relating to the merits were properly before the arbitrator. Pratt concedes that "an arbitrator might find that satisfaction of grievance procedure steps. . . have been waived, excused, or rendered futile." (Pl.'s Mem. Supp. Cross-Mot. Summ. J. 18.) Consistent with Pratt's statement that an arbitrator may find that grievance steps have been rendered futile, the arbitrator reported his finding that "the parties are at impasse." Because the issue of procedural arbitrability is left to the arbitrator, the Court will not interfere with the arbitrator's procedural ruling that the merits were properly before him.

In deciding the Grievance on the merits, the arbitrator was limited by the language of the CBA. The arbitrator's interpretation of the contract must be given deference. There is nothing in the record indicating that the arbitrator overstepped his bounds in ruling on the merits once the

9

parties agreed to submit the grievance to arbitration. After determining that the Grievance could proceed without separation, the arbitrator made a procedural determination that the Grievance was ripe for adjudication on the merits. The arbitration clause is very broad and provides that a grievance that has proceeded through the grievance procedure, as the Grievance did in some form, "may be appealed to arbitration by the Union serving the Company." It is plausible that under the CBA's language granting the Union authority to appeal the Grievance to arbitration, the arbitrator would accept the Union's position that the merits of the Grievance were the proper subject for arbitration and to reject Pratt's contrary argument. Based on the CBA's broad definition of "grievance," the broad arbitration clause, and the apparent disagreement between the parties as to the scope of the arbitration, the arbitrator arguably construed the CBA by arbitrating the Grievance on the substantive merits.

Pratt additionally asks this Court to vacate the award because of arbitrator bias. Pratt fails to demonstrate the "evident partiality" required to vacate an award based on arbitrator bias. Evident partiality is "found only 'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir. 1998) (citing *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989)). This "requires a showing greater than an 'appearance of bias,' but less than 'actual bias.'" *Id*. at 329. Furthermore, "[t]he alleged partiality must be direct, definite, and capable of demonstration, and 'the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator.'" *Id*. (citing *Consolidation Coal Co. v. Local 1643, United Mine Workers of Am*., 48 F.3d 125, 129 (4th Cir. 1995)).

Pratt's evident partiality claim is based on two statements purportedly made by the arbitrator at the outset of the arbitration that Pratt was "obfuscating" and had "something to hide." (Pl.'s Mem.

10

Supp. Cross-Mot. Summ. J. 21; Lemos Aff. ¶ 2.) These statements were made in response to the arbitrator's initial request that Pratt proceed with its case on the merits and Pratt's objection to that request. Sometime during this exchange, the arbitrator also noted that Prins and Walker "had been without money and benefits for a long time." *Id*.

Viewed in the context of the proceeding, the arbitrator's statements do not demonstrate the required standard of a "showing greater than an 'appearance of bias.'" *Horton Farms*, 166 F.3d at 329. The day prior to the arbitration, the arbitrator attempted to send an email to Pratt informing Pratt of his ruling that the Grievance would proceed as one complaint and be arbitrated on the merits. Because the email was misaddressed, Pratt did not become aware of the arbitrator's decision until Pratt arrived at the arbitration and was directed to proceed on the merits. The arbitrator likewise was unaware that Pratt did not receive the email and expected Pratt to be prepared to present its case on the merits. According to Pratt, the statements were made in the exchange following Pratt's objection to proceed. Taken in this context, the statements do not appear biased, but rather appear to reflect the arbitrator's acknowledgment that the employees needed a decision, frustration with Pratt's refusal to proceed with the arbitrator's directives, and Pratt's continued insistence on arguing the previously ruled upon issue of dividing the Grievance. Furthermore, following Pratt's exit from the arbitration, the arbitrator gave Pratt every chance to respond to the Union's claims, present its own exhibits on the merits, and rebut the exhibits submitted by the Union. Granting Pratt an additional month to present its case is not consistent with Pratt's claims of evident partiality, especially in light of the arbitrator's expressed concern that the employees had been without money and benefits for some time.

Finally, the parties agree that the arbitrator's awarding the Union the sum of $15,000 as an advance for the payment of attorneys fees associated with the costs of this litigation is unenforceable.

That award is "not rationally supported by or derived from the agreement" and the Union is not seeking its enforcement. *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002).  The Court will not enforce that portion of the award.

### IV. Conclusion

For the foregoing reasons, the Court will deny Pratt's cross-motion for summary judgment to dismiss the Union's counter-complaint and to vacate the arbitrator's award.  The court will grant the Union's motion for summary judgment to dismiss Pratt's complaint and to enforce the arbitrator's award except that portion awarding to the Union $15,000 as an advance on attorney's fees associated with the enforcement of the award.

An Order consistent with this Opinion will be entered.


Dated:  September 28, 2006                          /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                         UNITED STATES DISTRICT JUDGE